COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DIVISION

Civil No.

07   662

```
_____ )
                               )
JOSEPH F. SCHEBEL JR.,         )
                               )
        Plaintiff,             )
                               )
        v.                     )
                               )
DEUTSCHE BANK NATIONAL TRUST;  )
  Trustee of Ameriquest,       )
                               )
ACC CAPITAL HOLDINGS;          )
  a Delaware corporation,      )
                               )
AMERIQUEST MORTGAGE COMPANY;   )
  A subsidiary of ACC Capital  )
     Holding Corporation,      )
                               )
AMC MORTGAGE SERVICES;         )
  A subsidiary of ACC Capital  )
     Holding Corporation,      )
                               )
        and                    )
                               )
Roland Arnall,                 )
                               )
        Defendants,            )
_____ )
```

CLERKS OFFICE
SUPERIOR COURT
HAMPDEN COUNTY

2007 JUL -6  P 3: 49

COMPLAINT FOR TEMPORARY INJUNCTION
AND OTHER
EQUITABLE RELIEF
AND
MONETARY CIVIL PENALTIES

Plaintiff, the Joseph F. Schebel Jr. (hereinafter "Schebel"
and/or "Plaintiff") is a natural born free sovereign

person, who is pro se in the above mentioned case and
further reserves his right to obtain counsel as Defendant
deems necessary and hereby asserts and alleges the
complaint as follows:

1.    This is an action under Massachusetts General Law
Chapter 93A § 2, § 9 along with but not limited to § 11
along with Sections 5(a), 5(m)(1)(A), and 13(b) of the
Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§
45(a), 45(m)(I)(A), and 53(b), to secure permanent
injunctive relief and other equitable relief, including
rescission, reformation, redress and disgorgement, against
defendants for engaging in unfair or deceptive acts or
practices in violation of Section 5(a) of the FTC Act, as
amended, 15 U.S.C. § 45(a), and acts or practices in
violation of the Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. § 1692 et seq., as amended, and the
Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et
seq., as amended, and to obtain a monetary civil penalty
for violations of Massachusetts General Law Chapter 93A,
the FDCPA and FCRA against the Plaintiff Schebel.

2.    This is an action under Sections 6 and 16 of the Real
Estate Settlement Procedures Act of 1974 ("RESPA"), 12
U.S.C. §§ 2605 and 2614, to secure statutory remedies,
permanent injunctive relief, and other equitable relief
against defendants for engaging in violations of Section 6
of RESPA, 12 U.S.C. § 2605, and Section 3500.21 of the
Department of Housing and Urban Development's Regulation X
("Regulation X"), 24 C.F.R. § 3500.21 against the Plaintiff
Schebel.

### THE DEFENDANTS

3.    ACC Capital Holding Corporation (hereinafter "ACCCH"
and/or "Defendants"), is a Delaware corporation with its

principal place of business in Orange County, California. ACCCH is a national mortgage lender based in Orange, California. The company is the largest privately held retail mortgage lender in the United States and the largest sub-prime lender by volume. ACCCH is privately owned by Roland Arnall a named Defendant in this action.

4.    Defendant Ameriquest Mortgage Company (hereinafter "AMRQ" and/or "Defendants") is a subsidiary of ACC Capital Holding Corporation who maintains its principal place of business in Orange County, California and who at the time of contract with the Plaintiff held an office at 1500 Main St. suite 2518, Springfield, Massachusetts. AMC transacts business within the Commonwealth of Massachusetts.

5.    AMRQ is one of the United State's leading wholesale sub-prime lenders. AMRQ was founded in 1979, in Orange County, California, as a bank, Long Beach Savings & Loan. The Bank moved to Orange County in 1991 and was converted to a pure mortgaged lender in 1994, renamed Long Beach Mortgage C. In 1997, the wholesale part of the business (funding loans made by independent brokers) was spun ff as a publicly traded company, called long Beach Mortgage; the retail part of the business was renamed Ameriquest Capital and remain private.

6.    Defendant AMC Mortgage Services Ameriquest Mortgage Company ("AMC" and/or "Defendants") is a subsidiary of ACC Capital Holding Corporation who maintains its principal place of business in Orange County, California. AMC services loans for Ameriquest.

7.    At all times relevant to this complaint, defendant Roland Arnall ("Arnall") is the owner of ACC Capital Holding Corporation and it's subsidiaries.

8.    Individually or in concert with others, he has directed, controlled, formulated or participated in the acts and practices set forth herein. He transacts or has transacted business within the Commonwealth of Massachusetts.

9.    The Defendants ACCCH, AM and FCC, together with subsidiaries, operate together as part of a common enterprise (hereinafter collectively referred to as "Ameriquest").

10.    AMRQ and AMC are a "debt collector" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

11.    ACCCH, AMRQ, AMC, and Arnall are "persons" as that term is defined by Section 3(5) of RESPA, 12 U.S.C. § 2602(5), and are subject to the requirements of the RESPA and Regulation x.

12.    In connection with the servicing and collection of mortgage loans, AMRQ and AMC furnishes information to consumer reporting agencies. As such, AMRQ and AMC are subject to Section 623 of the FCRA, 15 U.S.C. § 1681s-2, which imposes a series of duties and prohibitions upon any person or entity that furnishes information to a consumer reporting agency.

## COMMERCE

13.    The acts and practices of all the Defendants alleged in this complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

14.    AMRQ and AMC are financial servicing company's specializing in the acquisition, servicing, and resolution of mortgage loans, primarily in the "sub-prime" market. The sub-prime market is comprised of persons who are considered

to be greater credit risks and, thus, may not meet the
strict underwriting' standards required to qualify for
prime, or "A," credit. Sub-prime services like Ameriquest
administer loans made to borrowers with greater credit risk
or perceived greater credit risk, including persons from
lower-income or minority neighborhoods.

15.  Ameriquest in 1996 paid $3 million to settle a Justice
Department lawsuit accusing it of gouging older, female and
minority borrowers. Prosecutors accused it of allowing
mortgage brokers and its employees to add a fee to these
customer of as much as 12% of the loan amount.

16.  In 2001, after being investigated by the Federal Trade
Commission, the company settled a dispute with ACORN a
national organization of community groups, promising to
offer $360 million in low-cost loans.

17.  In or approximately January 2006, AMRQ settled a $325
million settlement with state attorneys general and law
enforcement agencies and financial regulators in 49 states
and the District of Columbia over allegations of predatory
lending practices.

18.  As a mortgage servicer, AMC collects and processes
loan payments from Schebel on behalf of Ameriquest. The
mortgage loans that AMC services for AMRQ are held mainly
in real estate investment trusts ("REIT") on the secondary
market for the benefit of Ameriquest. AMRQ and AMC are paid
a servicing fee based on the unpaid principal balance of
the loans, in the REIT. In addition, AMRQ and AMC profits
from a myriad of fees that it charges consumers on the
loans it services, including late fees. For example, AMRQ
and AMC profits from money it "advances" to the Schebel to
pay for items that AMRQ and AMC deems necessary to protect
its rights in the property.

19.   These "corporate advances" include fees for property
inspections, demand letters, broker's price opinions,
foreclosure fees, and attorney fees. These corporate
advances are added to the loan balance, and AMRQ and AMC
profits from interest charged on the advances. AMRQ and AMC
monthly billing statements do not itemize these corporate
advances for Schebel.

20.   AMRQ and AMC also receives compensation, in the form
of commissions or otherwise, when it "force places"
casualty insurance on Schebel's home. Under the terms of
the mortgage loan serviced by AMRQ and AMC, Schebel was
required to maintain homeowners/fire insurance on their
home. Ameriquest advanced money to Schebel to pay for
casualty insurance that it places on Schebel home when,
according to Ameriquest, Schebel has allowed the insurance
to lapse, or that Schebel had failed to provided proof that
the insurance has not lapsed.

21.   This force placed insurance is much more expensive
than insurance purchased by the consumer. AMC own records
will show in addition, Ameriquest charges interest on the
money advanced for force placed insurance.

22.   The mortgage loans serviced by AMRQ and AMC have due
dates and grace periods of time after which a loan payment
is due but before which a late fee may be assessed. In many
instances, Ameriquest failed to post Schebel's on-time
mortgage payments to his account in a timely manner, and
then charges Schebel late fees or additional interest for
failing to make his payments "on time."

23.   Once this happens Schebel's loan would be categorized
as "delinquent," which in turn AMRQ and AMC would charges
other unwarranted fees, including fees for unnecessary or

bogus property inspections, broker's price opinions
("BPOs"), and attorneys' fees.

24.   AMRQ and AMC then failed to apply subsequent mortgage
payments to the amount due, or applies those payments to
other fees allegedly owed rather than to the principal and
interest due. Many instances, Ameriquest pyramids late
fees, i.e., it charges more than one late fee for a single
delinquency. As a result of these practices, Schebel fell
further behind on their scheduled mortgage payments
according to Ameriquest' records.

25.   In addition to the unwarranted late charges and other
fees in connection with alleged defaults, in many instances
AMRQ and AMC has placed Schebel's payments in "suspense"
accounts. In practice, the creation of a suspense account
allowed AMRQ and AMC to divert Schebel's payments away from
his mortgage payments. As a result, Schebel remain subject
to additional fees and related problems on his loans.

26.   AMRQ and AMC has improperly force placed casualty
insurance on Schebel home, even when AMRQ and AMC knew or
should have known Schebel already had insurance in place.
As a result of the premiums for the force placed insurance,
Schebel's regular mortgage payments have been deemed
insufficient, the loan placed in default status, and fees
improperly assessed by AMRQ and AMC. AMC own records will
show that in 2006 AMRQ and AMC charged Schebel $2417.00 for
forced placed casualty.

27.   When the Schebel requested the amount of money
necessary to "reinstate" (i.e., bring his account current)
or payoff his loan, AMRQ and AMC  demands often contain
fees that have been assessed by AMRQ and AMC, including
fees for property inspections, BPOs, demand letters, payoff
quotes, attorneys' fees, and prepayment penalties.

28.  In collecting late payments, AMRQ and AMC has used aggressive practices towards Schebel with continuing collection calls, a negative credit rating, additional fees, and has gone as so far as to threaten foreclosure, to obtain Schebel's agreement to forbearance agreements although Schebel adamantly object to the amount owed.

29.  AMRQ and AMC refused to work with Schebel or any other workout solutions but demanded the "total amount due." The total amount due includes all payments due and all fees assessed by AMRQ and AMC. AMRQ and AMC collectors are trained not to give the Schebel a breakdown of the fees, but to insist upon the total amount due immediately and discourage Schebel's disputes and questions about fees. AMRQ and AMC standard forbearance agreement requires consumers to pay all fees assessed by Ameriquest, and also to waive any and all claims they might have against Ameriquest.

30.  When Schebel disputed the aspect of his loan servicing, such as the timely posting of his payments, fees, force placed insurance, or inaccurate credit reporting, AMRQ and AMC repeatedly failed to timely and adequately acknowledge, investigate and/or respond to his complaint.

31.  As a result of Ameriquest' failure to post Schebel's mortgage payments to his account in a timely manner, Schebel was consequently assessed unwarranted late fees and related charges. The Defendants practices has placed Schebel into delinquency, created the need for Schebel to pay additional money for taxes and insurance, and has caused grave harm to his credit ratings.

## FEDERAL TRADE COMMISSION ACT VIOLATIONS

### Count I:

### Failure to Properly Post Defendants Payments

32.    Schebel incorporates by reference all the foregoing paragraphs.

33.    In the course and conduct of the Plaintiff's loan in regards to servicing and collection, the Defendants in numerous instances have failed to timely or properly post payments received by Schebel in a timely manner, and then assessed Schebel with late fees and other charges as a result.

34.    The Defendants' actions have caused and are likely to continue to cause substantial injury to Schebel. This injury is not reasonably avoidable by Schebel and can not be outweighed by countervailing benefits to Schebel.

35.    Defendants' acts or practices constitute unfair acts or practices in or affecting commerce in violations of Massachusetts General Law Chapter 93A, along with Sections 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

### Count II:

### Unfair and Deceptive Force Placement of Insurance

36.    Schebel incorporates by reference all the foregoing paragraphs.

37.    In the course and conduct of the Schebel's loan in regards to servicing and collection, the Defendants have force placed casualty insurance on Schebel's home when such insurance was already in place. Defendants failed to disclose adequately to Schebel that such insurance would be, or had been, force placed on his home and that the Schebel mortgage loan account would be, or had been, assessed for such insurance.

38.   The Defendants' actions have caused and are likely to continue to cause substantial injury to Schebel. This injury is not reasonably avoidable by Schebel and can not be outweighed by countervailing benefits to Schebel.

39.   Defendants' acts or practices constitute unfair acts or practices in or affecting commerce in violations of Massachusetts General Law Chapter 93A, along with Sections 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

### Count III:

### Misrepresentation of Amounts Owed Amounts Owed

40.   Schebel incorporates by reference all the foregoing paragraphs.

41.   In the course and conduct of the Schebel's loan in regards to servicing and collection, the Defendants in numerous instances have represented, expressly or by implication, that the Schebel owed amounts specified in Defendants' communications.

42.   On numerous occasions, Schebel did not owe the amounts that has been specified in Defendants' communications. The Schebel did not owe the amounts specified because, for example,

      (a)   fees included in the amounts specified are a result of AMRQ and AMC failure to properly post payments as alleged in Count I;

      (b)   fees included in the amounts specified are not allowed under the mortgage contract or permitted by law as alleged in Count IV; and/or

      (c)   the amounts specified has been calculated incorrectly by AMRQ and AMC.

43.   Therefore, Defendants' representations as set forth in paragraph 31 are false and/or misleading and constitute

deceptive acts or practices in violations of Massachusetts
General Law Chapter 93A, along with Sections 5(a) of the
FTC Act, 15 U.S.C. § 45(a).

### Count IV:

### Unfair and Deceptive Assessment and Collection of Fees

44.  Schebel incorporates by reference all the foregoing
paragraphs.

45.  In the course and conduct of the Schebel's loan in
regards to servicing and collection, the Defendants in
numerous instances have represented, expressly or by
implication, that fees assessed and collected by AMRQ and
AMC were;

> (a)   allowed under the mortgage contract and;
>
> (b)   permitted by law.

46.  On numerous occasions, the fees assessed and collected
by AMRQ and AMC were;

> (a)   not allowed under the mortgage contract or;
>
> (b)   not permitted by law. Nonetheless, AMRQ and AMC
>        improperly assessed and collected these fees.

47.  The Defendants' actions have caused and are likely to
continue to cause substantial injury to Schebel. This
injury is not reasonably avoidable by Schebel and can not
be outweighed by countervailing benefits to Schebel.

48.  Defendants' acts or practices constitute unfair and
deceptive acts or practices in or affecting commerce in
violations of Massachusetts General Law Chapter 93A, along
with Sections 5(a) of the Federal Trade Commission Act 15
U.S.C. § 45(a).

### Count V:

### Failure to Provide Three Day Right to Rescind

49.  Schebel incorporates by reference all the foregoing
paragraphs.

50.   In the course and conduct of giving Schebel a loan the
Defendants failed to allow Schebel his three day right to
rescind said loan.

51.   The Defendants' actions have caused and are likely to
continue to cause substantial injury to Schebel. This
injury is not reasonably avoidable by Schebel and can not
be outweighed by countervailing benefits to Schebel.

52.   Defendants' acts or practices constitute unfair acts
or practices in or affecting commerce in violations of
Massachusetts General Law Chapter 93A, along with Sections
5(a) of the Federal Trade Commission Act, 15 U.S.C. §
45(a).

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### Count VI
### False, Deceptive, Or Misleading Representations

53.   Schebel incorporates by reference all the foregoing
paragraphs.

54.   On numerous occasions, in connection with the
collection of the debt against Schebel by the defendants,
defendants have used false, deceptive, or misleading
representations or means, in violation of Section 807 of
the FDCPA, 15 U.S.C. § 1692e, including but not limited to:

    (a)   Falsely representing the character, amount, or
          legal status of a debt, or any services rendered
          or compensation which may be lawfully received
          by a debt collector for  collection of a debt. in
          violation of Sections 807(2)(A) and (B) of the
          FDCPA, 15 U.S.C. §§ 1692e(2)(A) and (B);

    (b)   Communicating or threatening to communicate to
          any person credit information about Schebel which
          is known or which should be known to be false,
          including the failure to communicate that a

disputed debt is disputed, in violation of
Section 807(8) of the FDCPA, 15 U.S.C. §
1692e(8); and

(c)    Using false representations or deceptive means to
collect or attempt to collect a debt or to obtain
information concerning Schebel, in violations of
Massachusetts General Law Chapter 93A, along with
Sections 807(10) of the FDCPA, 15 U.S.C. §
1692e(1O).

55.    Pursuant to Section 814 of the FDCPA, 15 U.S.C. §
16921,the acts and practices alleged in paragraph 40 also
constitute unfair or deceptive acts or practices in
violation of the FTC Act along with violations of
Massachusetts General Law Chapter 93A.

### Count VII
### Unfair or Unconscionable Debt Collections

56.    Schebel incorporates by reference all the foregoing
paragraphs.

57.    On numerous occasions, in connection with the
Defendants collection of debts, the defendants have used
unfair or unconscionable means towards Schebel to collect
or attempt to collect a debt, including but not limited to
collecting amounts (including any interest, fee, charge, or
expense incidental to the principal obligation) not
authorized by the agreement creating the debt or permitted
by law, in violations of Massachusetts General Law Chapter
93A, along with Sections 808(1) of the FDCPA, 15 U.S.C. §
1692f(I).

58.    Pursuant to Section 814 of the FDCPA, 15 U.S.C. §
1692/, the acts and practices alleged in paragraph 43 also
constitute unfair or deceptive acts or practices in
violation of the FTC Act.

## Count VIII

### Failure To Notify To Right To Dispute Debt

59.  Schebel incorporates by reference all the foregoing paragraphs.

60.  On numerous occasions, in connection with the Defendants collection of debts, the defendants have failed to notify Schebel of his right to dispute and obtain verification of payments made by AMRQ and AMC and to obtain the name of the original creditor, either in the initial communication with consumers by defendants, or within five days thereafter, in violations of Massachusetts General Law Chapter 93A, along with Sections 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).

61.  Pursuant to Section 814.of the FDCPA, 15 U.S.C. § 1692/, the acts and practices alleged in paragraph 46 also constitute unfair or deceptive acts or practices in violation of the FTC Act along with violations of Massachusetts General Law Chapter 93A.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

## Count IX

### Inaccurate Reporting of Information

62.  Schebel incorporates by reference all the foregoing paragraphs.

63.  In numerous instances, in the course and conduct of their business, defendants have furnished information relating to Schebel to a consumer reporting agency when defendants knew or consciously avoided knowing that the information was inaccurate, and when defendants have not, clearly and conspicuously, specified to consumers an address for mailing notices disputing said information.

64.   The acts and practices alleged in paragraph 49
constitute violations of Section 623(a)(1)(A) of the FCRA,
15 D.S.C. § 168Is-2(a)(1)(A).

65.   Pursuant to Section 621(a)(I) of the FCRA, 15 D.S.C. §
1681s(a)(I), the acts and practices alleged in paragraph 49
also constitute unfair or deceptive acts or practices in
violations of Massachusetts General Law Chapter 93A, along
with Sections 5(a) of the FTC Act, 15 US.C. § 45(a).

### Count X

**Comply to Report Transaction to Credit Reporting Agencies**

66.   Schebel incorporates by reference all the foregoing
paragraphs.

67.   Defendants regularly and in the ordinary course of
business furnish information to one or more consumer
reporting agencies about their transactions or experiences
with Schebel, and thus must comply with the provisions of
Section 623(a)(2) of the FCRA, 15 US.C. § 1681s- 2(a)(2).

68.   In numerous instances in which defendants have
furnished to a consumer reporting agency information that
defendants determined is not complete and accurate,
defendants have failed to promptly notify the consumer
reporting agency of that determination and provide to the
agency any corrections to that information, or any
additional information, that was necessary to make the
information provided by the defendants to the agency
complete and accurate; and defendants thereafter furnished
to the agency information that remained incomplete and
inaccurate.

69.   The acts and practices alleged in paragraph 54
constitute violations of Section 623(a)(2) of the FCRA, 15
U.S.C. § 1681s-2(a)(2).

70.   Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. §
1681s(a)(1), the acts and practices alleged in paragraph 54
also constitute unfair or deceptive acts or practices in
violations of Massachusetts General Law Chapter 93A, along
with Sections 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count XI

### Failure to Report Disputes By Consumer

71.   Schebel incorporates by reference all the foregoing
paragraphs.

72.   The Defendants in numerous instances where Schebel had
informed Defendants that he dispute information furnished
by Defendants to a consumer reporting agency, defendants
have not reported the disputes to any or all of the
consumer reporting agencies to which they furnish or have
furnished the information.

73.   The acts and practices alleged in paragraph 58
constitute violations of Section 623(a)(3) of the FCRA, 15
U.S.C. § 1681s-2(a)(3).

74.   Pursuant to Section 621(a) of the FCRA, 15 U.S.C. §
1681s(a)(1), the acts and practices alleged in paragraph 58
also constitute unfair or deceptive acts or practices in
violations of Massachusetts General Law Chapter 93A, along
with Sections 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### REAL ESTATE SETTLEMENT PROCEDURES ACT VIOLATIONS

### Count XII

### Failure to Properly Service Mortgage Loan

75.   Schebel incorporates by reference all the foregoing
paragraphs.

76. In numerous instances, in connection with the servicing
of Schebel mortgage loan and the administration of escrow
accounts, Defendants have violated the requirements of

Section 6 of RESPA, 12 U.S.C. § 2605, specifically
including the failure to:

    (a)   Promptly post payments received in a timely
           manner;

    (b)   Timely apply payments to principal and interest
           on consumers' accounts;

    (c)   Make timely payments of escrow funds for casualty
           insurance premiums and property taxes; and

    (d)   Timely and adequately acknowledge, investigate
           and respond to consumers' qualified written
           requests for information about the servicing
           of their loans and escrow accounts.

### CIVIL PENALTIES FOR VIOLATIONS OF THE FDCPA

77.  Defendants have violated the FDCPA as described above,
with actual knowledge or knowledge fairly implied on the
basis of objective circumstances, as set forth in Section
5(m)(I)(A) of the FTC Act, 15 U.S.C. § 45(m)(I)(A).

78.  Section 5(m)(I)(A) of the FTC Act, 15 U.S.C. §
45(m)(I)(A), Section 814(a) of the FDCPA, 15 U.S.C. §
16921and Section 4 of the Federal Civil Penalties Inflation
Adjustment Act of 1990,28 U.S.C. § 2461, as amended,
authorize the Court to award monetary civil penalties of
not more than $11,000 for each violation of the FDCPA.

79.  Each instance of this Complaint, in which each
Defendant has failed to comply with the FDCPA in one or
more of the ways described above, constitutes a separate
violation for which plaintiff seeks monetary civil
penalties.

### CIVIL PENALTIES FOR VIOLATIONS OF THE FCRA

80. Except as to violations of Section 623(a)(I), 15 U.S.C.
§ 1681s-2(a)(I), each instance in which each defendant has
violated the FCRA since October 23, 2004, the date that

Schebel and the Defendants entered into a contractual agreement. Each breach of the law, constitutes a separate violation of the FCRA for which Schebel seeks monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. § 1681s.

81.  In the event of a knowing violation, which constitutes a pattern or practice of violations of the FCRA, Section 621 of the FCRA authorizes the Court to award monetary civil penalties of not more than $2,500 per violation for violations occurring after September 30, 1997.

### CONSUMER INJURY

82.  Schebel has suffered, and will continue to suffer, substantial injury as a result of Defendants' violations of the FTC Act, FDCPA, FCRA, and RESPA. Absent injunctive relief by this Court, the Defendants are likely to continue to injure Schebel.

### TERMS COURT'S POWER TO GRANT RELIEF

83.  Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), section 814(a) of the FDCPA, 15 U.S.C. § *16921(a),* and section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), empower this Court to grant injunctive and other ancillary relief, including consumer redress, disgorgement and restitution, to prevent and remedy any violations of any provision of law enforced by the Commission.

84.  This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief to remedy injury caused by Defendants' law violations.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Joseph F. Schebel Jr., requests that this Court, pursuant to sections 5(a), 5(m)(1)(A), and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(I)(A), and

53(b), section 814(a) of the FDCPA, 15 U.S.C. § 1692/(a), section 621 of the FCRA, 15 U.S.C. § 1681s(a), Section 16 of the RESPA, 12 U.S.C. § 2614, along with Massachusetts General Law Chapter 93A, and pursuant to its own equitable powers:

1. Enter judgment against defendants and in favor of Schebel for each violation charged in the complaint;

2. Permanently enjoin and restrain defendants from violating the FTC Act, the FDCPA, the FCRA, and the RESPA towards Schebel;

3. Award such ancillary equitable relief as the Court deems necessary to prevent unjust enrichment and to redress Schebel for any injury resulting from defendants' violations of the FTC Act, FDCPA, FCRA, and RESPA, including but not limited to rescission or reformation of any contracts towards Schebel, the refund of monies paid, and disgorgement of ill-gotten gains;

4. Award Schebel monetary civil penalties for each of defendants' violations of the FDCPA and FCRA; and

5. Award plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.


Dated: July 6, 2007        Respectfully submitted,



Joseph Schebel/pro se
71 Columbia Dr.
Feeding Hills, Mass. 01030
413-789-7515

**VERIFICATION**

I, Joseph F. Schebel Jr., Plaintiff do hereby declare that I have read the foregoing Complaint and know the contents thereof. The same is true to my knowledge except to those matters that are alleged on information and belief; as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this six (6) day of July 2007 in Hampden County, Massachusetts.

Joseph F. Schebel Jr./pro se
71 Columbia Dr.
Feeding Hills, Ma. 01030
413-789-7515

Dated: July 6, 20007